Chancellor James
afterwards delivered the decree of the court.
Petition for a re-hearing, and to reverse the former decree in this case.
The court have reconsidered this case with much at-tcntjon, and with a determination, that if there should be *413 sufficient grounds to retract their former opinion, that they would do so, rather than persist in error. But while they consider it as obstinacy,not to give up a former opinion, although convinced that it is wrong; they are also fully sensible, that until such conviction does take place, that it would argue a want of firmness to waiver or to change. Under these impressions, we have reconsidered this cause, rejecting at the same time, as far as we have been able to do, all former impressions upon the- subject j and we now offer our opinion fully upon the case.
The grounds which the petitioner has offered for consideration, appear to be nearly the same as those which were submitted to us on the former argument. They are four fold.
1st. That he was surety, and not principal in the bond which was given to the defendant,' and therefore entitled to the equity which in certain cases has lately arisen in favor of sureties. „
2d. That the obligee was guilty of laches, in not putting the bond in suit against the principal, when required by the surety, and the principal having afterwards become insolvent, that therefore the surety has become exonerated.
3d. That the obligee has changed the nature of the original contract, by entering into a new one with the petitioner; and that the latter is bound only on such new contract.
4th. That the former decree given in this case is repugnant to the decree given in the case of the petitioner against Henry M. Rutledge, (Exor. of E. Rutledge.)
Besides, taking the above grounds, the petitioner has urged, that if the opinion of the court should be still against him, that the injunction be continued, until the. funds secured to the petitioner by the latter decree can be brought into operation, and the defendant 'receive payment from them, so far as.they may go.
In delivering our present opinion, we will at present waive the first ground taken by the court in the- decree, *414 viz: That the petitioner has failed in proving that he was a surety to the bond, and will proceed to examine the question, as if he were acknowledged a surety, which is a stronger ground for the petitioner.
Then upon the 2d. ground- of the alleged laches in the defendant, it appears in evidence that the bond was given on the 8th day of April, 1793, payable in five equal annual instalments — that the first instalment consequently became due on the 8ih April, 1794, and the last, on the 8th April, 1798, and that defendant might have commenced his action against the principal John Rutledge, as soon as the first instalment became due ; that however he did not do so until April, 1800, about two years after the last in-stalment became due. It further appears that defendant applied to the petitioner for the first time for payment of the debt, about fourteen months after the last instalment became due; at which time the petitioner required him to put the bond in suit against the principal, and he declined it, but proposed to put it in suit against all three of the obligors,which petitioner in his turn declined. It is on this statement of facts that the charge of laches against the defendant appears to be founded. Now the equity that is contended for, if it arises at all, must arise in favor of one who is bound by a solemn contract under his hand and seal; and we are of opinion, that before he can on this ground exonerate himself from such contract, he ought first to shew that he himself has been vigilent, “ vigilant-ibusnon dormiejtiibus leges svbveniimt,” is a maxim which appears peculiarly to apply to him who is seeking relief from this court. Besides the very nature of a contract, imposes a duty upon the debtor, either to pay when the debt becomes due, or to shew to the creditor some good cause why he should hot: but a contract does not impose an equal duty upon the creditor, to require his debt as soon as it is due. Hence it will result, that when a debt becomes due, it then becomes tbe duty of the debtor to look out for the creditor, either to pay off the debt, or that if he does not mean to pay it, that he may entitle *415 himself to some equity, that may exonerate him from it. But the petitioner having done neither in this case, he it is who has been guilty of the laches, and not the defendant. Upon this kind of reasoning, we apprehend, that that part of the case of Butler vs. the Comptroller is founded, where it is said “ that it is incumbent on the security, before he can expect relief, to apply to the obligee, and require him to sue the principal.” If it is his duty to apply to the obligee, he ought therefore to have applied in a reasonable time, after the first instalment became due; but it appears, that he waited for five years and four months after that period, before he required the obligee to sue jhe principal; and even then, that he did not look out for the obligee, to claim his equity, but the obligee looked out for him, to demand payment of his debt. Therefore, both on the ground of obligation or duty, and on the authority of the cases cited, it appears that it is the petitioner who was guilty of the laches, and not the obligee ; and consequently, that the petitioner is not entitled to the relief prayed upon his second ground. And this point being determined against him as surety, which is the highest ground on which he could stand, vice versa, as in the decree, it now becomes unnecessary to inquire whether he was a principal or not.
We now proceed to the third ground of the petitioner, viz : That defendant has changed the nature of the contract, and therefore has exonerated him from the bond. To establish this ground, the petitioner states in his bill, “ that after the application above mentioned from the said William Greenwood, (“ that is the application from him to the petitioner for payment of the bond,”) and having conversed with Edward Rutledge on the subject, the said Edward and your orator agreed that your orator should pay the said Wm. the nett amount of his crop of that year, after deducting his plantation expenses : and the said Edward promised to pay one thousand pounds, and to assume the balance of the debt, which proposition your orator communicated by letter to the said William, and he ac *416 quiesced therein.” Now it is not pretended that the de» fend ant was a party to the agreement between the petition» er’ anc^ Mr. Edward Rutledge. Then let us see how he acquiesced in the pi'oposition of the petitioner. The letter °1 petitioner of the 7th June, 1799, to which he refers, contains no more than the proposition on his part, but the assent of the defendant is necessary before a new contract, can arise.
Then how is this assent to be proved ? His silence of fourteen months is not even urged as an assent; and if it were, we do not see how his silence can be construed into such an assent as to do away an existing contract. But it is attempted to prove his assent by bis letter of the. 22d of August, 1800, and by his answer. We will first turn to the answer. The defendant has stated in it — “ that he denies he ever acceded to the proposition contained in the letter of the 7th of June, 1799, any further than agreeing to wait for the 1000/. from the said Edward Rutledge, and the nett proceeds of the crop of complainant; and that in so doing he had not the most distant idea or intention of releasing or exonerating any of the obligors to the said bond from their liability to the payment of the said debt, or any part thereof.” Now it is contended that it is immaterial what his ideas or intentions were, if he has in fact exonerated the petitioner. But this letter contains no clear and distinct proposition that defendant must look ño further to the petitioner than for his crop of that year ;■ and in fairness, the assent of the defendant must depend upon his idea and intention at the time. If it had been proposed to him clearly, that by thus waiting for his money, he must loose his lien on the bond, is it not to be supposed that he would, in an instant, have rejected the proposal ? He would have been the merest novice in the world if he had not. Then we have no idea that men should be thus concluded in their rights, without having a full statement of facts laid before them; nor that while they are extending favors they should be used as weapons -against them. Proposals of this collateral kind are so com- *417 in on from debtors to creditors, and are so often in favor assented to, that were this court upon such grounds to cx-tend relief, it would impair the obligation of contracts.— But independent of these considerations, the answer ap- • • pears to contain a full denial of the assent of the defendant, and therefore it must be taken as evidence against the petitioner, until contradicted by the evidence of two witnesses, or of one witness, and circumstances. However no such contradiction appears. But it is said that defendants letter of the 23d August, 1800, is a partial affirmance of the new contract, and that he is not to affirm in part and deny in part. The passage relied upon in that letter is as follows — “ By your letter of the 7th • of June, 1799, you engage to pay me the nett amount of your crop of that year, deducting plantation expenses;, Upwards of fourteen months have elapsed, and I have received no payment, however you may act with regard to that engagement.”
Here the counsel for the petitioner has always stopped, and has inferred from this passage alone, that the defendant has made a partial affirmance of the contract. But even this will not bear him out, for the words, “ however you may act;” evidently import, that the defendant left . the petitioner to do as he pleased as to that engagement; while he at the same time; and in the same breath declares in the foregoing part of the letter, “ that he must look to him for the debt,” and in the subsequent part of it, “ that he was now-under an absolute necessity .of requiring payment of the whole debt from him.” Taking the whole of this letter together, it therefore appears to us that it is rather a disagreement than an assent, to any new contract.
On the 4th ground of petitioner, the court will be very short. The defendant was no party to the suit between the petitioner and Henry M. Rutledge ; therefore none of the acts of the parties thereto can conclude his rights : the charges in the bill, and the admissions in the answer *418 being as to him, res inter alios acta. This we deem a suffix cient answer to this ground.
Therefore upon deliberate reconsideration of this case, the court are clearly of opinion that the petitioner is not entitled to the relief prayed for in his bill' upon his 2d ground^ because he himself was guilty of the laches complained of, and not the defendant: nor upon his third ground, because no new contract has been proved: nor upon his 4th ground, because the decree in the case of the petitioner and H. M. Rutledge can-Slot bind a third person who was no party to the same. It remains to consider whether the injunction should be continued until the funds secured to the petitioner can be brought into operation. And upon this application, the court are of opinion, that as the petitioner has failed hi establishing his grounds, to entitle him to any relief of this court, they cannot now find one principle upon which to decide, that defendant must wait till it would be in the power of petitioner to bring those funds into operation.' — ' We have not determined that defendant is obliged to receive those funds ; therefore there cannot' be any good reason why he should be delayed, until the monies arising from them can be raised. The petitioner has already had in the case against H. M. Rutledge, the assistance of this court as far as it could go, in bringing in those funds to his assistance : and there we must stop. Wherefore for the several reasons above stated, the court are of opinion, that the petition of the complainant be dismissed, and that’ the former decree in this ease be affirmed*